UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOHN M.,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:20-cv-02133-AR

**OPINION AND ORDER**

---

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff John M. (last name omitted for privacy) alleges that the Administrative Law Judge (ALJ) committed harmful error by failing to provide specific, clear and convincing reason for discounting his symptom testimony and failing to properly assess the medical opinions of

Page 1 – OPINION AND ORDER

record. Because the court finds that the ALJ erred on both counts, the Commissioner's decision is REVERSED and REMANDED for an immediate award of benefits.[1]

## ALJ'S DECISION

In denying plaintiff's application for Title XVI Supplemental Security Income (SSI), the ALJ followed the five-step sequential evaluation process.[2] (Tr. 15-33.) At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since April 17, 2018, the alleged disability onset date. (Tr. 15-16.) At step two, the ALJ determined that plaintiff suffered from the severe impairments of congestive heart failure and depression. (Tr. 16.) At step three, the ALJ concluded that plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 16-18.)

The ALJ then concluded that plaintiff had the RFC to perform sedentary work, subject to the following limitations: (1) he could perform no more than frequent balancing and no more than occasional stooping, crouching, crawling, kneeling, or climbing of ramps and stairs; (2) he would be precluded from climbing ropes, ladders, or scaffolds, and he would need to avoid exposure unprotected heights, moving machinery and similar hazards; (3) he would be further limited to simple, repetitive, routine tasks with no more than occasional contact with the general public. (Tr. 19.)

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. § 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

At step four, the ALJ determined that plaintiff was not able to perform his past work as a case worker, clinical social worker, or faculty member. (Tr. 31-32.) At step five, the ALJ determined that plaintiff could perform a significant number of jobs existing in the national economy, including cable worker, semi-conductor bonder, callout operator, and charge account clerk. (Tr. 33.) The ALJ therefore concluded that plaintiff was not disabled. (Tr. 44.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

**A.**     ***Subjective Symptom Testimony***

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence

that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013).

At the administrative hearing, plaintiff testified that he was unable to work primarily due to symptoms and limitations associated with congestive heart failure. Plaintiff testified that he has good days and bad days, with debilitating congestive heart failure symptoms occurring about every few days. (Tr. 49.) On bad days, he has severe nausea and vomiting, often cannot keep food down, and gets shortness of breath with exertion. (Tr. 49-51, 1021, 1087, 1092-93, 1151.)

On good days, he tries to be more active by walking his dog, playing basketball with friends, or occasionally kicking a soccer ball with his nephew. (Tr. 49-51, 1158.) Plaintiff also indicated that his friend who owns a tutoring company provided him with some work for her tutoring company during the relevant period, but explained that he was only able to work for her a few times because his symptoms made his functioning unpredictable. (Tr. 47-49.)

There is no evidence of malingering here, and the ALJ determined that plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. The ALJ was therefore required to provide clear and convincing reasons for discounting plaintiff's symptom testimony. See *Ghanim*, 763 F.3d at 1163. The court concludes that the ALJ failed to meet that standard here.

The ALJ cited several reasons for finding plaintiff's testimony to be unpersuasive. First, the ALJ found that plaintiff's activities undermined his testimony. Inconsistency between a claimant's daily activities and his testimony regarding his functional abilities can provide clear and convincing reason to reject that testimony. Here, plaintiff's activities included basic light chores, taking care of his dog, grocery shopping, basketball, and occasional travel to see family. As noted above, plaintiff testified that he can do most of those activities only when he is having a good day. (Tr. 49-52, 821, 840, 916, 1056, 1151, 1158.) Furthermore, most of plaintiff's activities were performed for less than an hour at a time, and therefore do not contradict plaintiff's allegations that his symptoms prevented him from sustaining substantial gainful activity. (Tr. 49-52, 821, 840, 889, 982, 984, 1056.) Given plaintiff's testimony regarding the waxing and waning nature of his symptoms, his ability to perform short-lived activities when he is having a good day does not provide a clear and convincing reason to reject his testimony.

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988) (a claimant's activity that is consistent with her alleged disability does not indicate an ability to work).

The ALJ also discounted plaintiff's testimony on the basis that he made inconsistent statements regarding his work activities and physical abilities. In general, an ALJ may properly consider inconsistent statements in assessing a claimant's symptom allegations. See *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017). "A single discrepancy fails, however, to justify the wholesale dismissal of the claimant's testimony." *Id.* at 906-07.

The ALJ first found that plaintiff's statements describing his limited role at a friend's tutoring company "appear[ed] to suggest a level of work that was more robust than what [plaintiff] described at the hearing." (Tr. 25.) Upon review, the court finds that reason unsupported by substantial evidence. At the administrative hearing, the ALJ asked whether plaintiff had worked or looked for work since his filing date, and plaintiff answered in the negative. (Tr. 47.) Plaintiff then testified that a friend had provided him with some editing work for her tutoring company, but explained that the role was not sustainable due to the unpredictability of his symptoms. (Tr. 47-49.) Plaintiff stated that he did not look for or solicit that work, and that its duration was short-lived due to his symptoms and limitations. (Tr. 47-49, 821, 828, 888-89, 894.) Viewed in context, the court finds no inconsistency between plaintiff's statements about that limited role and his alleged inability to sustain continued employment. See *Elijah L.S. v. Comm'r Social Sec. Admin.*, Case No. 3:20-cv-1089-AR, 2022 WL 17845933, at *5 (D. Or. Dec. 22, 2022) ("[W]hen read in context; the statement is not inherently contradictory."). Therefore, the ALJ's finding of inconsistency is not supported by substantial evidence and does not constitute a clear and convincing reason for rejecting plaintiff's testimony.

Similarly, the court finds no inconsistency in plaintiff's testimony regarding his ability to play basketball or walk his dog. Contrary to the ALJ's implication, plaintiff did not testify that he could never play basketball or walk his dog since the onset of his congestive heart failure. (Tr. 25.) Rather, he testified that due to an increase in his symptoms, which waxed and waned depending on the day, he had not been able to do those activities since Christmas but would try to do them in the future on his good days. (Tr. 49-50.) Because there was no contradiction in those statements, the ALJ did not provide a clear and convincing reason to reject plaintiff's subjective symptom testimony about his abilities. *Popa*, 872 F.3d at 906-07.

The ALJ next found that plaintiff's testimony was unpersuasive because his symptoms appeared to improve with treatment. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, the ALJ noted instances in which plaintiff reported "feeling better" and concluded from that evidence that plaintiff's symptoms were well-controlled with medication and treatment and were therefore not disabling. For instance, in July 2018, a few months after his congestive heart failure diagnosis, plaintiff reported that he was "feeling well," trying to walk his dog more, and able to mow his lawn. (Tr. 380.) In November 2018, he reported "feeling well, improved since last visit" and indicated that his nausea was well-controlled with Zofran and that "going back to work [as a tutor] has helped his mood. (Tr. 821.) One month later, plaintiff reported that he was "back to work" and walking his dog regularly. (Tr. 889.) Providers also observed that he "looks like he is feeling much better than he was 2 months ago, and that he reported feeling much better with an improved outlook on his current health status." (Tr. 894, 889.)

The ALJ also noted that plaintiff also reported improvement with medication in 2019. He had no cardiovascular complaints in January 2019, apart from stable dyspnea (shortness of breath) while climbing stairs. (Tr. 884 (noting that plaintiff continued to exercise without significant exertional symptoms).) In October 2019, plaintiff reported that his vomiting had abated, and his nausea had also improved. (Tr. 1173.) By January 2020, plaintiff reported being "more active recently," having traveled to Texas for the holidays and indicated that he had "no limitation with walking," and had "even played tennis/soccer without difficulty." (Tr. 1179.) Plaintiff denied edema. (Tr. 26, 1179.) At the same visit, plaintiff reported that he had not had an episode of vomiting in over a month, and even his occasional morning nausea had improved. (Tr. 1179.) From that evidence, the ALJ concluded that plaintiff's symptoms were well-controlled with medication and treatment and were therefore not disabling.

The Court disagrees. Although the ALJ's findings of improvement are supported by the record, the court finds the explanation of the trajectory of plaintiff's symptoms oversimplified, particularly given its omission of plaintiffs reported "bad days." *See Maiden v. Berryhill*, Case No. 2:17-cv-00420-MC, 2018 WL 1069465, at *3 (D. Or. Feb. 27, 2018) ("Medical improvement 'must be read in the context of the overall diagnostic picture the provider draws . . . [because] [o]ccasional symptom-free periods are not inconsistent with disability." (quoting *Ghanim*, 763 F.3d at 1162)). Despite improvement in his conditions, plaintiff's testimony and medical record support his claim that he continued to suffer from severe symptoms on bad days throughout the relevant period, including nausea and vomiting. Between 2018 and 2020, plaintiff reported experiencing periods of nausea and vomiting at nearly every medical appointment, only occasionally reporting that it had improved. (Tr. 363-64, 379-80, 385, 399, 452, 649-51, 656,

660, 663, 668-69, 672, 821, 828, 840, 847, 852-53, 861, 889, 916, 1006, 1021, 1029, 1042, 1053, 1173, 1179, 1087, 1092-93, 1151, 1158, 1165-66, 1186-89, 1192-94.) Indeed, some of plaintiff's treatment notes indicate that he had been dealing with nausea and vomiting for several days or even weeks. (Tr. 399, 452, 650-53, 1187-89.) Given that history, the court finds that the ALJ's conclusion that plaintiff's symptoms were not disabling is not supported by substantial evidence in the record. Accordingly, the ALJ's rationale is not a clear and convincing reason to discount plaintiff's testimony. *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021) (mentioning that a claimant's symptoms improved with medication and treatment "does not provide clear and convincing *reasons* to discredit that [claimant's] testimony").

Finally, the ALJ found that the objective medical evidence did not support plaintiff's testimony.[3] (Tr. 21, 25-27.) However, "an ALJ may not disregard a claimant's testimony solely because it is not substantially affirmed by objective medical evidence." *Trevizo*, 871 F.3d at 679 (quotations omitted). Because the ALJ did not provide additional, legally sufficient reasons for rejecting plaintiff's testimony, a lack of objective corroboration cannot constitute grounds for rejecting plaintiff's testimony in this context. Therefore, the ALJ's rejection of plaintiff's testimony constitutes harmful error.[4] *Brown-Hunter*, 806 F.3d at 494.

---

[3]    To the extent that the ALJ argued specifically plaintiff's allegations regarding the frequency or severity of his nausea and vomiting were unsupported by the medical record, the Court finds that the records cited in the previous paragraph support, rather than contradict, plaintiff's testimony regarding those symptoms.

[4]    Although the Commissioner argues that plaintiff's depression also improved with treatment, plaintiff's primary contention was that he was unable to work due to his congenital heart failure and associate limitations. Therefore, the ALJ's rejection of plaintiff's allegations of mental limitations was irrelevant to the ultimate nondisability determination.

Page  9  – OPINION AND ORDER

B.     *Medical Opinion Evidence*

For disability claims filed on or after March 27, 2017, new regulations for evaluation medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In making that determination, the ALJ primarily considers the "supportability" and "consistency" of the opinions. *Id.* §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support a medical providers' opinion. *Id.* §§ 404.1520c(c)(1), 416c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416c(c)(2).[5]

An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs

---

[5]     The ALJ may also, but is not required to, consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship.  *Id.* §§ 404.1520c(c)(3), 416c(c)(3)

Page 10 – OPINION AND ORDER

when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. at 1012-13 (citing *Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996)).

Plaintiff argues that the ALJ improperly found unpersuasive the medical opinions of cardiologist Daniel Westerdahl, MD and Brooks Gaston, FNP. (Pl.'s Br. at 12-14, ECF No. 25.) The Commissioner counters that the ALJ's findings were supported by substantial evidence. (Def.'s Br. at 11, ECF No. 27.) The court agrees with plaintiff.

Dr. Westerdahl began treating plaintiff soon after his congenital heart failure diagnosis. (Tr. 439-43.) In July 2018, Dr. Westerdahl completed a functional assessment for plaintiff, which he updated in May 2020. (Tr. 635-38, 1099-1103.) In both assessments, Dr. Westerdahl opined that plaintiff would miss more than two days of work per month and would need extra breaks every hour due to the side effects of his medications. (Tr. 636-37, 1102-03.) Dr. Westerdahl also opined that plaintiff would need to elevate his legs to waist height with prolonged sitting. (Tr. 635, 1100.) NP Gaston began treating plaintiff in April 2018 and completed a functional assessment in August 2018. (Tr. 364-65, 640-44.) Like Dr. Westerdahl, NP Gaston opined that plaintiff would miss at least two days of work per month due to his impairments, would need to elevate his legs during prolonged sitting, and would need extra breaks on an hourly basis. (Tr. 641-44.)

The ALJ found both opinions unpersuasive, reasoning that the proposed restrictions were unsupported by and inconsistent with the medical record. (Tr. 27-28.); *Tommasetti,* 533 F.3d at 1041 (explaining that an ALJ may discount part of a medical opinion when it is inconsistent with

the record). First, noting that plaintiff indicated that he spends time reading and watching TV and had not reported trouble sitting during those activities, the ALJ concluded that there was no evidence supporting the opinion that plaintiff would need to elevate his legs periodically throughout the workday. (Tr. 27-29.) The court finds that conclusion not supported by substantial evidence, however. Notably, the court cannot determine from the record whether plaintiff lies down or sits with his feet on the ground while reading or watching TV. Furthermore, as plaintiff argues (*citing* Tr. 374, 821, 915-16, 1192), his continued use of diuretics (medications that reduce fluid retention) and past reports of edema provide record support for that sitting limitation. Thus, the ALJ fails to provide a basis upon which to discount Dr. Westerdahl's and NP Gaston's opinions that plaintiff would need to elevate his legs throughout the workday.

      The ALJ next found that the opinions that plaintiff would miss more than two days of work a month were unexplained and unsupported by the record. (Tr. 27-28.) The court disagrees. As reflected in the record, plaintiff experiences frequent episodes of nausea, often causing him to miss or reschedule medical appointments. (Tr. 363-64, 379-80, 385, 399, 439-41, 447, 452-55, 649-51, 656, 660, 663, 668-69, 672, 828, 847, 852-53, 861, 883-84, 889, 916, 982, 1006, 1021, 1029, 1042, 1087, 1092-93, 1151, 1158, 1165-66, 1173, 1186-89, 1192-94.) In light of those absences, the medical opinions that plaintiff would likely miss at least two days of work per month is both explained and supported by the medical record.

      Likewise, the court is not persuaded by the ALJ's conclusion that the limitations proposed by Dr. Westerdahl and NP Gaston were inconsistent with plaintiff's improvement with treatment and with his activities of daily living. (Tr. 27-28.) Contrary to the ALJ's assertion, the record does not reflect a level of improvement with treatment that contradicts Dr. Westerdahl

and NP Gaston's opinions because plaintiff continued to experience severe symptoms and limitations every few days. As discussed above, plaintiff's activities were performed only on his good days, which were interrupted by periods of nausea and vomiting on his bad days. Because plaintiff's activities were not inconsistent with his symptoms, the ALJ's reference to plaintiff's improvement with treatment and daily activities was not supported by substantial evidence. Thus, the ALJ's failed to provide a legally sufficient reason to discount the medical opinions of Dr. Westerdahl and NP Gaston.

Finally, as plaintiff argues, the ALJ erred in failing to address Dr. Westerdahl and NP Gaston's opinions that he would need frequent unscheduled breaks due to his medications and cardiac symptoms. (Tr. 27-29, 636, 642, 1101.) Plaintiff's diuretics medications cause increased need to urinate, as well as symptoms of lightheadedness and dizziness, which may require him to lay down and rest periodically. (Tr. 828, 916, 1087, 1151, 1158.) The ALJ's failure to consider that proposed limitation in formulating plaintiff's RFC was harmful error. *Ghanim*, 763 F.3d at 1166 ("In determining a claimant's residual functioning capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe.").

## C.  *Remedy*

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest

uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

      The court concludes that the credited-as-true factors are satisfied here and that remand for further proceedings would serve no useful purpose. As explained above, the ALJ neither provided specific, clear and convincing reasons to rejecting plaintiff's subject symptom testimony nor offered legally sufficient reasons to discount the medical opinions of NP Gaston and Dr. Westerdahl. *Pulliam v. Berryhill*, 728 F. App'x 694, 697 (9th Cir. 2018) (citing *Garrison*, 759 F.3d at 1020). Plaintiff testified that, in light of his fluctuating symptoms and particularly his nausea, he is unable to consistently show up to work at a specific time and location. (Tr. 56.) Dr. Westerdahl and NP Gaston similarly opined that plaintiff would likely miss at least two days of work per month. (Tr. 636-37, 641-44, 1102-03.). If that testimony and those opinions are credited-as-true, they establish that plaintiff is disabled because the vocational expert testified that someone who misses more than two days of work per month is unable to sustain competitive employment. (Tr. 62-63.). Moreover, the court does not have serious doubt about whether plaintiff is disabled. *Trevizo*, 871 F.3d at 683. Accordingly, an award of benefits is appropriate.

//

//

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for an immediate award of benefits.

IT IS SO ORDERED.

DATED January 11, 2023.

                                                   JEFFREY ARMISTEAD
                                           United States Magistrate Judge